UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **FIKRETA OMEROVIC,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-00694-NCC |
| **ANDREW M. SAUL,**[1] | ) |
| **Commissioner of Social Security,** | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Fikreta Omerovic ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* and for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 23) and Defendant has filed a brief in support of the Answer (Doc. 27). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I. PROCEDURAL HISTORY

Plaintiff filed her applications for SSI and DIB on April 7, 2014 (Tr. 164-79). Plaintiff was initially denied on August 26, 2014, and she filed a Request for Hearing before an Administrative Law Judge ("ALJ") on November 4, 2014 (Tr. 96-101, 105-09). After a hearing,

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

by decision dated June 20, 2017, the ALJ found Plaintiff not disabled (Tr. 7-25). On March 5, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, and that Plaintiff has not engaged in substantial gainful activity since January 1, 2014, the alleged onset date (Tr. 12). The ALJ found Plaintiff has the severe impairments of anxiety, post-traumatic stress disorder, depression, and insomnia, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations (Tr. 15). She is limited to performing simple, routine and repetitive tasks (*Id.*). She is limited to simple work-related decisions (*Id.*). She can interact occasionally with supervisors, co-workers, and the public (*Id.*). The ALJ found Plaintiff capable of performing past relevant work as a garment folder, night cleaner, and hand packager (Tr. 18). In the alternative, the ALJ found that other jobs exist in significant numbers in the national economy that Plaintiff can also perform including cleaner II, salvage laborer, and housekeeping cleaner (Tr. 19). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 20). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

## III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails

to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id*. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because

substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to resolve inconsistencies within the vocational expert's testimony (Doc. 23 at 2-5). Second, Plaintiff argues that the ALJ's credibility determination is deficient because it is unsupported by the evidence (*Id.* at 5-10). Third, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence (*Id.* at 10-15). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Evaluation of Plaintiff's Subjective Complaints**

The Court will first consider the ALJ's evaluation Plaintiff's subjective complaints,[2] as the ALJ's evaluation of Plaintiff's symptoms was essential to the ALJ's determination of other issues, including Plaintiff's RFC. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d

---

[2] Social Security Ruling (SSR) 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the Court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ reviewed the objective medical evidence of record and determined it failed to support the severity of Plaintiff's alleged symptoms. Specifically, the ALJ found that "the objective medical record establishes that while the claimant has some symptoms secondary to her mental impairments these symptoms are not as limiting as she alleges" (Tr. 16). In support of her assessment, the ALJ noted Plaintiff's largely normal mental health exams. For example, as noted by the ALJ, upon intake at the Family Care Health Centers to establish mental health care, Plaintiff reported significant depressive symptoms, but her exam was generally unremarkable, and after starting treatment, Plaintiff reported improved mood, feeling much better, and feeling proud of herself for seeking care for her mental health (Tr. 16, 383, 399, 405, 437, 444-46, 450, 466-68). An ALJ may determine that subjective complaints are not credible in light of objective medical evidence to the contrary. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

Second, the ALJ questioned the timing of the Plaintiff's treatment relative to her disability claim. The ALJ noted that just after appointing a representative in her disability claim, Plaintiff presented at the emergency room with "vague reports of shortness of breath and

6

otherwise completely normal exam findings" but that prior to this visit, Plaintiff "had no treatment for her alleged mental impairments" (Tr. 16, 353). *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged"). The ALJ also highlighted the significant gap in Plaintiff's treatment history; Plaintiff reported that it had been two to three years since she last had any medical care (Tr. 16, 470). *Milam v. Colvin,* 794 F.3d 978, 985 (8th Cir. 2015) (noting that gaps in medical treatment contradict plaintiff's subjective complaints of disability conditions and supports the ALJ's decision to deny benefits).

Third, the ALJ repeatedly noted Plaintiff's improvement with regular treatment (*See* Tr. 16). For example, by July 2015, just a couple months after starting counseling, Plaintiff reported feeling much better than she had for a very long time (Tr. 16, 445). *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (conditions which can be controlled by treatment are not disabling); *Davidson v. Astrue*, 578 F.3d 838, 846 (8th Cir. 2009) ("Impairments that are controllable or amenable to treatment do not support a finding of disability.")

Fourth, the ALJ found that Plaintiff's "activities indicate she is far more capable than she alleges" (Tr. 16). In doing so, the ALJ noted that Plaintiff socializes with her family and enjoys shopping and that her counselor recommended she move, dance, and stay as active as possible (Tr. 16, 445, 456). Indeed, as indicated by Defendant, at the consultative examination in August 2014, Plaintiff said she got a number of insect bites on her legs after working in her garden (Tr. 335). Further, as noted by the ALJ, Plaintiff reported to the Office of Inspector General

Investigator[3] that she spends most of her days at home taking care of her grandchildren (Tr. 13, 522). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding her activities of daily living also raised legitimate concerns about her credibility"); *Bernard v. Colvin,* 774 F.3d 482, 489 (8th Cir. 2014) (quoting *Johnson v. Apfel,* 240 F.3d 1145, 1148 (8th Cir. 2001)) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'"); *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (finding the plaintiff's reported ability to perform light housework, cook, do laundry, shop, watch TV, drive, leave the house alone, and regularly attend church "undermines her assertion of total disability").

Fifth, the ALJ considered Plaintiff's failure to be more forthcoming with physicians. Specifically, the ALJ indicated that Plaintiff was uncooperative and vague at her August 2014 consultative exam with Dr. Sherman Sklar ("Dr. Sklar") and that "the claimant is likely much more capable than she presented at the exam" (Tr. 14, 343-47). Dr. Sklar found Plaintiff not to be a "reliable historian" (Tr. 343). The ALJ further noted "if the claimant's symptoms were as debilitating as she states, she would have been forthcoming with that information to the psychological consultative examiner" (Tr. 16). *See Julin v. Colvin*, 826 F.3d 1082, 1087-88 (8th Cir. 2016) (discussing evidence in the record "from which the ALJ could infer [the plaintiff's] claims were overstated or not entirely reliable").

For the reasons discussed, the Court finds the ALJ's evaluation of Plaintiff's subjective complaints to be based on substantial evidence and consistent with the Regulations and case law.

---

[3] After a hearing was held in this matter, the Office of Disability of Disability Adjudication and Review (ODAR) requested an investigation into the activities and functioning of the Plaintiff. The Cooperative Disability Investigations Unit, St. Louis, a branch of the Social Security Administration's Office of the Inspector General conducted an investigation and filed a Summary Report of Investigation dated February 27, 2017 (Tr. 518-23).

**B. RFC**

Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

A "claimant's residual functional capacity is a medical question." *Lauer*, 245 F.3d at 704 (quoting *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)). The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary

9

responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ found Plaintiff has the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations (Tr. 15). She is limited to performing simple, routine and repetitive tasks (*Id.*). She is limited to simple work-related decisions (*Id.*). She can interact occasionally with supervisors, co-workers, and the public (*Id.*).

The Court finds that the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly addressed the consistency of Plaintiff's subjective complaints and in doing so, conducted a complete and detailed analysis of Plaintiff's medical record, her activities of daily living, and several other factors. The ALJ additionally properly addressed the opinion evidence of record.

First, the ALJ considered the August 25, 2014 opinion of State Agency psychological consultant Marsh Toll, Psy.D. ("Dr. Toll"), affording it "only some weight" (Tr. 74-84). In so doing, the ALJ found Dr. Toll's findings "generally consistent" specifically as to mild limitation in regard to maintaining concentration, persistence, and pace but that Plaintiff's ongoing issues with depression, which make concentration difficult, are well-managed (Tr. 17). Indeed, Dr. Toll generally found Plaintiff not to be significantly limited in most functional areas (*See* Tr. 80-82). In fact, the ALJ found Plaintiff to be more limited than as suggested by Dr. Toll; the ALJ determined that Plaintiff had moderate limitations with regard to social functioning contrary to the finding by Dr. Toll of no limitation (Tr. 16-17, 81).

Second, the ALJ reviewed the previously addressed August 2014 consultative exam with Mr. Sklar (Tr. 17, 343-47). Mr. Sklar assigned Plaintiff a Global Assessment of Functioning

(GAF)[4] score of 55 (Tr. 17). The ALJ indicated that "GAF scores merit little weight in the disability process" and noted that Mr. Sklar stated that Plaintiff "was not a reliable informant" and that "this exam was merely a one-time snap shot of the [Plaintiff's] subjective statement" (tr. 17). The ALJ additionally found the GAF score not consistent with the record of the Plaintiff's acknowledged activities including socializing with her family, shopping, and caring for her grandchildren (Tr. 17, 346, 522).

Third, the ALJ considered the May 9, 2016 opinion of Plaintiff's counselor, a social worker, Karen Slaven-Reynolds, M.S.W. ("Ms. Slaven-Reynolds"), affording the opinion little weight because it was inconsistent with the record (Tr. 17, 503-07[5]). The ALJ further noted that Ms. Slaven-Reynolds is not an acceptable medical source and only treated Plaintiff for a year (Tr. 17). Indeed, as a social worker, Ms. Slaven-Reynolds is not an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a); 416.913(a) (effective until March 27, 2017). However, the ALJ also indicated that she "took this opinion into consideration in reaching the conclusion that [Plaintiff] could only perform unskilled work" (Tr. 17). Ms. Slaven-Reynolds, as noted by the ALJ, found that the Plaintiff was unable to or seriously limited in her ability to do unskilled work (Tr. 17). Specifically, Ms. Slaven-Reynolds indicated that Plaintiff was unable to deal with the stress of semi-skilled and skilled work and that Plaintiff was seriously limited in her ability to

---

[4] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, 32-34 (4th ed. rev. 2000). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. *Id.* at 32.

[5] Ms. Slaven-Reynolds' report was inadvertently filed a second time in the transcript (*See* Tr. 512-16). The Court will refer to the report's first reference alone.

travel to unfamiliar places and unable to use public transportation (Tr. 17). The ALJ also considered the signature of Jaron Asher, M.D. ("Dr. Asher") and the associated annotation to Ms. Slaven-Reynolds' report, affording it no weight as Dr. Asher indicated that he did not treat the claimant (Tr. 17).

Fourth, the ALJ reviewed the opinion of Plaintiff's treating physician Kenneth E. Hemba, M.D. ("Dr. Hemba") who in a July 2016 letter stated that he agreed with Ms. Slaven-Reynolds' opinion and that he fully supported the Plaintiff's application for disability benefits due to her psychiatric illness (Tr. 17, 517). Dr. Hemba did not comment any further regarding Plaintiff's functional limitations (Tr. 517). The ALJ afforded the opinion little weight, finding the record as a whole to be inconsistent with the limitations adopted by Dr. Hemba, that Dr. Hemba's own treatment records did not support the opinion, that Dr. Hemba is not a specialist in the mental healthcare field, and that Dr. Hemba primarily treated the Plaintiff for her physical conditions (Tr. 17-18). Indeed, an ALJ may properly discount a physician's opinion when it is not consistent with the record and relates to matters outside the physician's field. *Wagner v. Astrue*, 499 F.3d 842, 850 (8th Cir. 2007) (an ALJ may properly discount a treating physician's opinion when it is "inconsistent with the record as a whole"); *Guilliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ( ("[O]pinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists); *Singh*, 222 F.3d at 452 ("The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Further, a physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017).

Fifth, the ALJ also reviewed and properly considered the Third Party Adult Function Report dated April 18, 2014, submitted by Plaintiff's son[6] (Tr 18, 210-17). The ALJ found that the report could not be given significant weight because Plaintiff's son cannot be considered a disinterested third party and his statements, like those of Plaintiff, are not consistent with the preponderance of the opinions and observations by medical doctors in this case (Tr. 18). Specifically, the ALJ notes that Plaintiff's son indicated that Plaintiff could only lift 10 pounds, cannot walk more than 10 minutes, and needs to rest after five minutes but that Plaintiff's social worker encouraged Plaintiff to dance and move (Tr. 18, 215, 445, 456). *See Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 2006) (an ALJ may discount corroborating testimony on the same basis used to discredit a claimant's testimony).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints.

**C. Vocational Expert**

Finally, Plaintiff asserts that the ALJ failed to resolve inconsistencies within the vocational expert's testimony (Doc. 23 at 2-5). Vocational Expert Delores Gonzalez ("Ms. Gonzalez") testified at Plaintiff's June 13, 2016 hearing before the ALJ (Tr. 63-72). At the hearing, when asked whether her answer that Plaintiff's could return to her prior work as a garment folder, night cleaner and hand packager would change if Plaintiff could not communicate in English, Ms. Gonzalez responded:

> The jobs that I cited would not require her to read any – anything written. It's possible that she may have difficulty, you know, talking with supervisors or coworkers. But for

---

[6] The ALJ incorrectly indicates that the form is completed by Plaintiff's daughter. The Court will not penalize the ALJ for an inadvertent mistake. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("[A]n arguable deficiency in opinion-writing technique does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome.").

the most part, the jobs that I cited would allow for the person to not have to perform work that would be – require talking.

(Tr. 70). On May 9, 2017, nearly a year later, Ms. Gonzalez answered a set of interrogatories regarding this matter (Tr. 293-300). Specifically, when asked in the interrogatories if Plaintiff could perform any of her past work if she was not able to communicate in English, Ms. Gonzalez answered in the affirmative and explained: "All past unskilled jobs could be performed. However, the job as a sewing machine operator is skilled and would be precluded. The other jobs would require occasional interaction with supervisors and coworkers" (Tr. 294). Both at the hearing and in her answers to the interrogatories, Ms. Gonzalez states that there was not any conflict between her testimony and the DOT and/or SCO (Tr. 69, 295). Relying, in part, on the Vocational Expert's testimony, the ALJ found that Plaintiff could return to her past relevant work as a garment folder, night cleaner and hand packager (Tr. 18). Alternatively, the ALJ determined that there are other jobs that exist in significant numbers in the national economy that Plaintiff also can perform including cleaner II, salvage laborer, and housekeeping cleaner (Tr. 19). In so doing, the ALJ considered the Plaintiff's age, education, work experience, and RFC (*Id.*). In relevant part, the ALJ found Plaintiff to have "at least a high school education" and that she "is able to communicate in English" (*Id.*).

The Court finds that substantial evidence supports the ALJ's determination at step four that Plaintiff could return to her past work. Even if the ALJ erred in her conclusion that Plaintiff had at least a high school education and could communicate in English, the Court finds such an error to be harmless. *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (noting that an error is harmless unless the ALJ would have decided the case differently). Under the Commissioner's regulations, a claimant's grade level and ability to communicate in English are educational factors to be addressed at Step 5 of the sequential inquiry. 20 C.F.R. §§ 404.1564(b),

416.964(b); *see also Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (referring to the claimant's age, education, and relevant work experience as a vocational factor and not a medical factor). Here, the ALJ determined at step four that Plaintiff could return to her past work and that, therefore, a finding of not disabled was appropriate. It is well settled law that the five-step inquiry ends once the ALJ determines at step four that the claimant can return to her past relevant work. *Goff*, 421 F.3d at 790 ("If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."). To the extent Plaintiff asserts that the vocational expert's testimony was inconsistent, the testimony of a vocational expert is not required when the ALJ makes a finding of not disabled at step four of the sequential evaluation process. *Hill v. Colvin,* 753 F.3d 798, 801 (8th Cir. 2014) (finding vocational expert not to be required at step four of the process). Regardless, upon review of the vocational expert's testimony, the Court does not find a conflict between her oral testimony and her response to a similar interrogatory. In her hearing testimony, Ms. Gonzalez addressed Plaintiff's inability to communicate in English and indicated that some of Plaintiff's prior work may be precluded because, in those jobs, Plaintiff would need to interact in English with her supervisors or co-workers. Ms. Gonzalez also stated that many of the jobs she cited would not require this interaction. Ms. Gonzalez's response to the interrogatory clarifies her testimony by explicitly stating that Plaintiff could perform all past unskilled jobs but not those other jobs requiring occasional interaction with supervisors and coworkers. Therefore, the Court finds the ALJ's determination that Plaintiff could return to her past work is supported by substantial evidence and is consistent with the Regulations and case law.

15

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 30th day of August, 2019.

                                              /s/ Noelle C. Collins
                                              NOELLE C. COLLINS
                                              UNITED STATES MAGISTRATE JUDGE